### MARINE v. PEYSER et al.

(City Court of New York, General Term.   May 18, 1894.)

TRIAL—DIRECTING VERDICT.
  It is error to direct a verdict where the facts are uncertain or there is a conflict in the evidence.

Appeal from trial term.

Action by Arlando Marine against Simon Peyser and others. There was a judgment in favor of plaintiff, and defendants appeal. Reversed.

For former report, see 27 N. Y. Supp. 226.

Argued before EHRLICH, C. J., and VAN WYCK and McCARTHY, JJ.

Fromme Brothers, for appellants.
Ormiston & Dorsett, for respondent.

McCARTHY, J.   This is an appeal by the defendants Peyser, Wolfe and Eisenberg from a judgment in favor of the plaintiff, entered upon a verdict of a jury. The action is brought to recover upon a promissory note of $1,000 and interest, and the complaint alleges, in substance, the making of the note by Peyser, and delivery thereof by him to one Dempsey and Smith, named as defendants herein, and their delivery thereof to Eisenberg, and his to Wolfe, and thereafter by mesne indorsements to plaintiff. The answer, in substance, admits the making of the note, but puts in issue the other material allegations. They allege that the note was given without consideration, and deny that it was indorsed and delivered by Dempsey and Smith to Eisenberg, and then by him to Wolfe; but allege that the note was purely an accommodation note, and that the indorsements are purely accommodation indorsements, with the use of said note restricted to a special purpose, to wit, to enable Dempsey and Smith to procure discount thereof to raise money wherewith to be enabled to carry on certain work, and for no other purpose; but that, after procuring the said note and indorsements in this way, Dempsey and Smith diverted the same fraudulently from the purposes for which it was given, and passed the same in

payment of or as security for a precedent indebtedness of theirs to plaintiff, of all of which plaintiff had knowledge. On the trial the appellants had the affirmative. It appeared that Dempsey and Smith were contractors, and had contracted to do certain stone-work, and, upon performing such work in the manner provided for in the agreement between them and Peyser, would be entitled to certain payments, and at certain times and under certain conditions. It was claimed that at the time of the giving of the note in suit there was nothing due or payable to Dempsey and Smith, they not having done their work, and not being able to prosecute the same; and also that there was advanced some cash, and upon the express understanding that the plaintiff should have it discounted, and they advance the money to Dempsey and Smith. Under the contract the payment had not become due when the note was given, and plaintiff had knowledge of all these facts; and the other indorsements were procured in like manner. The defendants further established that Dempsey and Smith did not perform their contract, and the work was never properly done. The plaintiff unqualifiedly admitted that he received the note after maturity, and further admitted that the note was passed in payment of a precedent debt. This stone had been delivered a year prior to the making of the note.

The court, at the request of the plaintiff, charged the jury "that there has not been any fraudulent diversion of this note," to which defendants duly excepted. Upon a careful examination of the case, we think the trial justice erred in charging as above requested, for the evidence clearly presents this among the issues of fact to be determined, and therefore ought to have been submitted to the jury. The agreement to indorse notes does not take away in the least the question at issue, to wit, for what purpose was this note given, and was it fraudulently diverted? The defendants had the affirmative, and presented their side at the opening of the trial. At folios 50, 51, 52, 53, 54, 55, and 56, Eisenberg, one of the defendants, testified to, among other facts, as follows:

"Well, he started to work again, and Mr. Dempsey, and also Mr. Marine, called at my office, and Mr. Marine said: 'Well, Mr. Dempsey can't get the buildings inclosed, and you had better give him your note and I will give you mine, and I can get your note discounted and you get mine discounted, and it will help Mr. Dempsey along, so that he will go ahead with his work.' And I said to Mr. Marine: 'I cannot swap any notes with you. I will do this,' I said, 'It is not due yet,—the one thousand dollar payment. $240 was put on by a lien by the representative of Dempsey and Smith;' and I said, 'I will give you $760 in cash and $1,000 in my note, providing you will take care of it when the note becomes due, and will carry it out according to the contract,' and Mr. Marine said he would do so. * * * About the 10th of October, 1892, Mr. Marine called upon me, and he said I should help Mr. Dempsey along,—to advance him money to go ahead with the building, so that they could get the building inclosed before the cold weather came along. And Mr. Marine offered to give me his note for $1,000, and that I should give him mine, and I should get his note discounted, and help Mr. Dempsey; and Mr. Marine offered to get his note discounted and help him along; and I refused to do so, and I saw I had trouble with it before, and I thought I would keep away from trouble, and I offered Mr. Marine this: I said, 'If you carry out the contract, which is not due yet, but will be due, I will give the $1,000 note, and

also $1,000 in cash payment.' I said to Mr. Marine: 'I refuse to take your note. I will advance him the cash payments of $760, which, with the $240 which was put on a lien against Dempsey and Smith on the property by the man that was employed by Dempsey and Smith, would make the $1,000,' and $1,000, my note, which I would give to Mr. Dempsey, and Mr. Marine should get it discounted, and advance him money. And I made the note out, and Mr. Marine was in the office at the time, and I indorsed it right over, and gave it to Mr. Marine; and about a couple of weeks after, when Mr. Dempsey called around, I asked him— The Court: Is this the note you speak of in suit? Witness: Yes, sir. By Defendant's Attorney: And that was all that was said before you gave him the note?" "I gave him the note."

Again, at folios 60 and 61:

"That note was given to Dempsey and Smith in the presence of Mr. Marine. It was given to Dempsey and Smith to help Messrs. Dempsey and Smith. It was given to Mr. Marine to help Dempsey and Smith. Mr. Peyser did not owe Mr. Marine any money. The note was given to Dempsey and Smith. Mr. Peyser did not owe Mr. Dempsey at that time, and he turned the note over to Mr. Marine. I knew Mr. Marine furnished the stone for that building."

Wolfe says, at folio 66:

"And Mr. Eisenberg and Mr. Peyser said it would take so long to make a man who goes on a bond to complete his work that the building would go to rack and ruin, and we might better give these people the note they want, so as to assist them; and then, if we have no redress, we can sue on the bond."

The plaintiff, at folio 76, says that the note was given to him for an antecedent debt.

Dempsey, at folio 77, says:

"I remember the giving of the note on October 15th, of $1,000. At that time the buildings were topped out. I never asked Mr. Eisenberg for any advance. I did not say to him that if he would give me that note that I would have it discounted, and raise money on it."

Here there was clearly a conflict, and thus a question of fact raised between the testimony of Eisenberg and Wolfe on one side and Marine and Dempsey on the other as to the arrangements under which the note in suit was given, and as to its fraudulent diversion. This, then, should have been left to the jury; for, when the facts are uncertain, or there is a conflict in the evidence, the question must be submitted to the jury. Potts v. Mayer, 74 N. Y. 595; Marine v. Peyser (City Ct. N. Y.) 27 N. Y. Supp. 228. Judgment should therefore be reversed, and new trial ordered, with costs to the appellant to abide the event.

VAN WYCK, J., concurs.    EHRLICH, C. J., dissents.